## Tom Day v. The State.

### No. 3909.   Decided June 6, 1908.

**1.—Theft from Person—Insufficiency of the Evidence.**
Where upon trial for theft from the person by means of private stealing, etc., the evidence did not show that the property was taken from prosecutor's person privately and without his knowledge and consent, the conviction could not be sustained.

**2.—Query—Drunkenness—Consent.**
Whether drunkenness would take the place of consent, or want of consent is not decided.

Appeal from the District Court of Hamilton.   Tried below before the Hon. N. R. Lindsey.

Appeal from a conviction of theft from the person; penalty, two years imprisonment in the penitentiary.

The opinion states the case.

*J. W. Warren* and *A. R. Eidson,* for appellant.—On question of insufficiency of evidence: McLin v. State, 29 Texas Crim. App., 171; Files v. State, 36 Texas Crim. Rep., 206; 36 S. W. Rep., 93; Kerry v. State, 17 Texas Crim. App., 178; Woodward v. State, 9 Texas Crim. App., 412; Clark v. State, 34 Texas Crim. Rep., 120; Graves v. State, 25 Texas Crim. App., 333.   On question that evidence fails to show that the property was taken from the person of prosecutor: Gibson v. State, 100 S. W. Rep., 776; Green v. State, 28 Texas Crim. App., 493; Gage v. State, 22 Texas Crim. App:, 123.

*F. J. McCord,* Assistant Attorney-General, for the State.

DAVIDSON, Presiding Judge.—Appellant was convicted for theft from the person, his punishment being assessed at two years confinement in the penitentiary.

The indictment contains two counts, the first charging that defendant did fraudulently and privately take from the possession and person of H. C. McDonald, and without the knowledge and consent of the said McDonald, personal property, etc., and the second count charges the property was taken so sudden as to prevent resistance, etc.   The consideration of the jury was confined to the first count.

The evidence in substance shows that the alleged owner McDonald was drunk to the degree of not being able to recollect or remember anything in regard to the transaction.   He had something like $60 on the night of the alleged theft, and was exhibiting it about the barroom where he was drinking, and from the testimony of some of the witnesses undertook to count the money a time or two and at one time during the evening loaned appellant $10, and finally demanded

its return. Appellant at once complied with the request. He says he does not remember anything that occurred during that night. He was asked the direct question: "Q. Did you give Tom Day your consent to take any of your money? A. Not that I know of." On cross-examination he stated that he did not know where he lost his money or anything about it. Did not remember seeing any one else in the saloon at the time Mr. Day was in the place where the money was taken; did not remember of having his money in his hands that night, or having it on the counter and trying to get Mr. Burks to take and keep it for him. In order to get a clear conception of the testimony of the witness Brunk it may be well to repeat his, by question and answers, in so far as it bears upon the questions involved for decision: "Q. Did you see the defendant get anything from Mr. McDonald? A. He got some money from him. Q. How much did you see him get? A. A $10 bill and some silver. Q. State to the jury where they were and how he took it? A. They were in Tony McGuire's saloon, and Mr. McDonald was counting his money and wanted Mr. Burks to take it and keep it for him till morning, and Mr. Day reached under his hand and pulled out one of the bills and put it in his pocket, and then he took the pocketbook and took $3 or $4." There was some subsequent conversation between this witness and appellant which we deem unnecessary to repeat as it did not refer so much to the taking and manner of taking as to the purpose for which it was taken. On cross-examination, in regard to this matter, the witness testified as follows: "John Burks, Mr. McDonald, and myself and Mr. Day were in the saloon that night. I never heard anything said in there that night about Mr. Day borrowing any money from Mr. McDonald. The only thing that I heard about the money was that Mr. McDonald wanted Mr. Burks to take the money and keep it for him till next morning, and Mr. Burks told him that he would rather not do it, for him to keep it himself. Mr. McDonald had the money out of his pocket at the time he was trying to get Mr. Burks to keep it for him. I think Mr. McDonald counted some sixty dollars as well as I remember. It was green-back and silver money. One time McDonald dropped his pocketbook and the silver fell out, and Burks picked it up. McDonald was in front of the bar and Mr. Burks behind the bar.' McDonald was drunk at the time and Day was drinking, too, but I do not know whether he was drunk or not. I was not with Mr. McDonald but just a little while after Mr. Day got the money. Day and I went home pretty soon. * * * 'What did Day do when you say you saw McDonald pile out there on the counter the currency and Day take $10 in currency, and then take $3 or $4 in silver; what did he do when he did this?' A. He took $10. McDonald had $60 and Day reached under there and got a $10 bill, and then picked up the pocketbook and took some silver out and showed it to me and put it in his pocket. He did not say anything to me or make any sign to me about the paper money. When he took the silver he sorter showed it

to me and put the pocketbook back. I was in two feet of him, I guess. Mr. Burks was behind the bar. We were right up against the bar in front, and Mr. Burks was right behind it." Burks testified that appellant, McDonald and Brunk were in his saloon together. McDonald had some money, between $60 and $70, mostly in bills. All the parties were drunk or drinking. McDonald proposed to set up the drinks, and Day declined on the ground that "he did not want to spend what money he had and didn't want to sponge on him." McDonald told him that he would loan him some money; that he had plenty of money; that he had money in the bank, and he pulled this money out of his pocket and threw it all over the bar, and part of it fell down on the floor, and McDonald asked him how much he wanted, and he said $10 would be enough, and he loaned him $10. After that McDonald told Day that he did not believe he wanted to loan him the money; that he might need it, or something, and Day told him that he did not care anything about his money, etc., and then McDonald said: "No, I will let you have it just like I told you I would," and McDonald went up and tried to give him the money, but witness was busy and did not know whether he gave it to him or not. This witness says he was busy cleaning up the bar and getting things ready to go; they were drinking too much and he was anxious to close up. It was some time before he could get them to leave. Just after closing this witness says he was on the sidewalk and asked the defendant if he had any of McDonald's money, and the defendant said, "yes, $10," and witness told him to give it to him and he would give it to McDonald next day, and the defendant gave him a piece of paper which he thought at the time was a $10 bill, but afterwards ascertained that it was a soft piece of paper. That he saw McDonald give the defendant $10, and saw McDonald subsequently take it back. He did not see appellant get any more money, but saw McDonald trying to give him some, but he was busy and did not see him get it. At the time McDonald was counting his money witness saw Day with the purse and saw him with the money McDonald had. He was counting it back to McDonald to show him that he had all his money. Appellant testified in his own behalf, and among other things, stated that McDonald had about $55 or $60; that he counted it for him. That McDonald remarked, "That is all right, that is what I thought I had," and he picked it up and started to put it in his pocket, and that time it fell on the floor and that he picked it up for him and they went out of the house out on the sidewalk. Just after Burks and defendant went out of the saloon door Burks said to appellant, "That fellow is drinking and he might think that you took that money off of him, and appellant stated he did not remember getting it; that he was drunk, and says, "did I get some of his money, and he says, 'yes, you got $10,' and I run my hand in my pocket and got what I thought was $10, and says, 'I didn't know I had any of his money,' and he says, 'yes, he lent you $10.' I felt through my pockets, and he says, 'you put it in your coat pocket,' and I felt down there and

got him what I thought was it. I did not take any of McDonald's money that night with the intention of keeping it. I did not take any of it while he was not looking at me."

It seems from this testimony that at the time appellant took the money upon which the State relies for a conviction, it was upon the counter. The evidence tends very strongly, if not almost conclusively, to show that the money was on the counter, especially the pocketbook. If the money was in the hands of McDonald, it was taken in the presence of the other witnesses while it was being counted, and this was the manner of taking. Under the counts submitted to the jury, in order to convict, the evidence must show that the money was fraudulently and privately taken without the knowledge and consent of McDonald. If appellant took the money from the counter, then theft from the person was clearly not shown; if he "reached down" as the witnesses say, and took the bill, then it was certainly with the knowledge of McDonald, unless the fact that he was too drunk to realize the fact that his money was being taken when taken. Just how far a court would be authorized to go in saying that drunkenness would take the place of consent or want of consent is a novel proposition, and one upon which we have found no authorities. There are cases where parties were unconscious of their property being taken by reason of being asleep, as being sufficient evidence to predicate a want of consent as well as a want of knowledge of the fact that the property is being taken, but in this case, the alleged owner at the time the property was taken is shown to have had sufficient intelligence, knowledge, recollection and memory to know the amount of money he had and to be able to make a clear statement when his money was counted as to the amount of it. As before stated, in order to convict the State must prove in this particular case that McDonald lost his money without his knowledge and without his consent, and that it was taken privately from his person with a fraudulent intent on the part of appellant. We are of opinion that the evidence does not justify the conviction under this state of case. The evidence is not sufficient to show that the money was taken from his person privately, and without his knowledge, and without his consent.

Without reviewing the other questions we are of opinion the evidence is not sufficient to justify the conviction of theft from the person under the counts submitted to the jury.

The judgment is reversed and the cause is remanded.

*Reversed and remanded.*

Brooks, Judge, absent.